UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-23582-CIV-MARTINEZ/GOODMAN

DR. BOZORGMEHR POUYEH,

     Plaintiff,

v.

PUBLIC HEALTH TRUST OF JACKSON
HEALTH SYSTEM, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Pro se* Plaintiff Dr. Bozorgmehr Pouyeh filed his second amended complaint against Defendants Public Health Trust of Jackson Health System ("Jackson"), Carlos Migoya, Dr. Steven Gedde, Dr. Stephanie Brown, Dr. Donald Temple, and Dr. Doe, alleging employment discrimination because Pouyeh's application to Jackson's medical residency program was denied. [ECF No. 84, p. 8]. Pouyeh's complaint and first amended complaint were dismissed based on insufficient service of process and for failure to comply with Rule 8(a)(2). [ECF No. 66, p. 3]. Pouyeh was provided leave to file a second amended complaint, which he filed. [ECF No. 84]. Defendants filed a motion to dismiss Pouyeh's second amended complaint. [ECF No. 104]. Plaintiff filed a response in opposition. [ECF No. 105]. Defendants did not file a reply. United States District Judge

Jose E. Martinez referred to the Undersigned all rulings on pretrial, non-dispositive matters and a Report and Recommendations on all dispositive matters. [ECF No. 87].

For the reasons stated below, including the Eleventh Circuit's affirmance of a dismissal of identical discrimination claims made by Pouyeh, the Undersigned **respectfully recommends** that the District Court **grant** Defendants' motion and **dismiss** Plaintiff's second amended complaint **with prejudice**.

## I.  BACKGROUND[1]

### a.  Pouyeh's first and second amended complaints

Pouyeh's first complaint, filed in August 2016, was 138 pages, not including exhibits. [ECF No. 1]. The first 68 pages of the complaint laid out background information about the Jackson residency program, Pouyeh's credentials, and the damages that his denial to the residency program has allegedly caused him and his family. [ECF No. 1, pp. 1-68]. The alleged discrimination claims incorporated all preceding paragraphs and did not state what factual allegations were the basis for the subject claim. Further, it was unclear what role each defendant allegedly carried out in the discrimination. [*See* ECF No. 1, pp. 69-138].

Upon consideration of Plaintiff's first amended complaint, the Undersigned recommended that the Court provide Pouyeh with "a final opportunity" to file a second

---

[1]   The facts in the background section are from Plaintiff's complaints and are deemed to be true for purposes of ruling on Defendants' motion to dismiss.

amended complaint that complies with Rule(a)(2)'s requirement of a "short and plain statement of the claim" and that does not exceed 70 double-spaced pages. [ECF No. 81, p. 4]. Judge Martinez adopted the Undersigned's report and recommendations but warned Pouyeh that it would be his "final opportunity" to amend. [ECF No. 83, p. 2].

Pouyeh then filed his second amended complaint, which is 52 pages, not including exhibits. [ECF No. 84]. Again, Pouyeh's allegations arise from Jackson's decision to not admit him to Jackson's ophthalmology residency program at the Bascom Palmer Eye Institute for the years 2010-2015. [ECF No. 84, p. 4]. Pouyeh, who was born in Iran, received his medical degree from a university in Iran and thus is considered an international medical school graduate ("IMG"). [ECF No. 84, pp. 5, 10]. Pouyeh points to what he believes is unfair treatment of IMGs, like himself, in support of his discrimination claim.

Pouyeh alleges the following claims:

- **Count I – Violation of Equal Protection Clause of the Fourteenth Amendment against all defendants except the director of the ophthalmology residency**. [ECF No. 84, pp. 27-30]. Pouyeh alleges that Jackson considered an applicant's national origin during the admissions process. As support, Pouyeh points to the Harrington Program, which admits IMG physicians from Latin America so that these physicians will return to their home countries and serve those communities and the fact that "Arab" applicants have also been admitted to Jackson's residency programs (11.3% of IMGs). *Id.* at 29. Pouyeh also includes conclusory language stating that he meets the credentials for the program and that, but for this discrimination, he would have been hired.

- **Count II – Violation of 42 U.S.C. § 2000(e) and the FCRA against Jackson**. [ECF No. 84, pp. 30-31]. Pouyeh alleges that Jackson hired "Arab" and Hispanic applicants at the cost of discriminating against other IMGs. He also includes

3

conclusory language that he meets the credentials for the program and that, but for this discrimination, he would have been hired.

- **Count III – Violation of 42 U.S.C. § 1981 and § 1983 against all defendants except the director of the ophthalmology residency**. [ECF No. 84, pp. 31-32]. Pouyeh alleges that Jackson considers an applicant's citizenship status, which is prohibited. He includes the same conclusory language that he meets the credentials for the program and that, but for this discrimination, he would have been hired.

- **Count IV – Violation of Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 against all defendants "except the Program Director for the Harrington Program**." [ECF No. 84, pp. 33-36]. Pouyeh alleges that the practice of admitting U.S. Seniors to residency programs before they have taken their Step 2 exams but requiring IMGs to take the Step 2 exams before being admitted is "irrational favoritism" at the cost of discriminating against IMGs.

- **Count V – Violation of 42 U.S.C. § 2000(e) and FCRA against Jackson**. [ECF No. 84, pp. 36-38]. Similarly, Pouyeh argues that requiring IMGs to pass Step 2 exams before admission to the residency program is the equivalent of requiring different scores for IMGs and is a proxy for favoring American national origin.

- **Count VI – Violation of Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 against all defendants except the director of the ophthalmology residency.** [ECF No. 84, pp. 38-41]. Pouyeh argues that the requirement that IMGs pass the Step 2 exam on the first attempt is arbitrary and is not an indicator of success as a physician.

- **Count VII – Violation of Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 against all defendants except the director of the ophthalmology residency; Count VIII – Violation of 42 U.S.C. § 2000(e) and the FCRA against Jackson**. [ECF No. 84, pp. 41-46]. Pouyeh alleges that the preference for IMG applicants who are five years within medical school graduation is irrational and not an indicator of success as a physician. He further states he would have been hired but for this unconstitutional preference.

- **Count IX – Violation of Equal Protection Clause of the Fourteenth Amendment and substantive due process against Jackson, its CEO, its president, and director of the ophthalmology residency**. [ECF No. 84, pp. 46-49]. Pouyeh argues that Jackson's policy of not admitting IMGs to the Bascom Palmer residency program

(1.4% of applicants in the past 10 years) is arbitrary since Jackson has admitted other Iranian medical school graduates to its internal medicine residency and to is clinical fellowship programs. [ECF No. 84, p. 12]. Pouyeh states that, but for this discrimination, he would have been accepted to the Bascom Palmer residency program.

- **Count X – Violation of 42 U.S.C. § 2000(e) and the FCRA against Jackson**. [ECF No. 84, pp. 49-50]. Pouyeh again states that Jackson's policy of not admitting IMGs to the Bascom Palmer residency program has a disparate impact on individuals with a national origin other than the United States, including Pouyeh.

- **Count XI –Violation of Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 against all defendants except the director of the ophthalmology residency and director of the "Latin America program."** [ECF No. 84, pp. 50-51]. Pouyeh states that Jackson "sets aside 7 positions for neurology, while they exclude IMGs if they want to pursue ophthalmology instead of neurology." *Id.* at 51. Pouyeh states there is no rational basis for this discrimination.

Pouyeh's alleged damages include being unable to meet a wife, have kids, and have a home. [ECF No. 84, p. 27 ("[D]efendants' actions [are] equivalent to killing Plaintiff's (would be) wife and children, demolishing his house and making him sleep on the street . . .")].

### b. Pouyeh's Prior Discrimination Lawsuit Against Jackson

Pouyeh previously filed suit against Jackson in the Southern District of Florida in October 2012, alleging discrimination stemming from his denial to the Bascom Palmer residency program and related events occurring between 2010 through 2012 (the "2012 Lawsuit"). *Pouyeh v. Bascom Palmer Eye Institute, et al.*, U.S. District Court for the Southern District of Florida, Case No. 12-cv-23580-JLK, ECF No. 1. Pouyeh amended his complaint three times in that action and U.S. District Court Judge James Lawrence King granted a

motion to dismiss and dismissed Pouyeh's third amended complaint with prejudice. *Id.*
at ECF No. 90, pp. 11-12.

On appeal, the Eleventh Circuit summarized Pouyeh's claims with the district
court, stating:

> Pouyeh's Third Amended Complaint contained nine counts of
> discrimination and named as defendants Bascom Palmer; the Trust; Dr.
> Gedde and the members of the Residency Selection Committee . . . In each
> of the counts, he alleged specifically (1) he had applied for the position; (2)
> he was not interviewed; (3) he was treated differently than American
> interviewees; (4) Bascom Palmer and the Trust knew of his national origin
> or alienage; (5) other immigrant Iranian doctors also were excluded from
> interviews; and (6) his national origin or alienage was a motivating factor
> in declining to interview him.

*Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 804 (11th Cir. 2015).

Pouyeh brought claims for (1) education-based discrimination in violation of Title
VI, 42 U.S.C. § 2000d; (2) employment discrimination, in violation of Title VII, 42 U.S.C.
§ 2000e-2(a)(1), the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, and 42 U.S.C. §
1981; (3) retaliation in violation of Title VII, FCRA, and 42 U.S.C. § 1981; (4) deprivation
of his due process right to employment, education, and to obtain a medical license, in
violation of 42 U.S.C. § 1983; (5) conspiracy to interfere with his constitutional rights in
violation of 42 U.S.C. § 1985; and (6) negligent failure to prevent conspiracy from
depriving him of his civil rights in violation of 42 U.S.C. § 1986. *Id.*

On appeal, the Eleventh Circuit affirmed the district court's dismissal of Pouyeh's
lawsuit. *Id.* at 803. The Eleventh Circuit found that Pouyeh's education-based claims

failed because they were conclusory and because medical residents at Jackson were employees. *Id.* at 809. As to his employment discrimination claims, the Eleventh Circuit found that Pouyeh "did not provide sufficient factual matter to suggest discrimination." *Id.* at 810. And he "failed to state a plausible claim of disparate treatment discrimination." *Id.* Further, Pouyeh's disparate impact claim failed because he did not include "statistics, sufficient to show the practice of not hiring graduates of foreign medical schools has resulted in prohibited discrimination." *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to state a cause of action for which relief may be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). When conducting this analysis, the Court may examine only the four corners of the complaint. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]o survive a motion to dismiss, a plaintiff must do more than merely label his or her claims." *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1325 (S.D. Fla. 2004) (citing *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996)).

Additionally, the court may dismiss a "shotgun pleading." *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015); *see also B.L.E ex rel. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009) (affirming order granting motion to dismiss shotgun complaint). A shotgun complaint fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Further, although *pro se* pleadings are liberally construed, this "leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action[.]" *Brown v. One Beacon Ins. Co.*, 317 F. App'x 915, 917 (11th Cir. 2009) (citation omitted). Rather, *pro se* litigants are required to comply with the minimum procedural rules that govern pleadings. *Beckwith v. Bellsouth Telecommc'ns. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).

## III.   ANALYSIS

Defendants contend that Pouyeh's second amended complaint should be dismissed because (1) it was not timely served under Rule 12(b)(5); (2) Pouyeh is barred from relitigating claims brought in his 2012 Lawsuit; and (3) Pouyeh's second amended complaint does not comply with Rule 8(a)(2), requiring a short and plain statement of the

claim. [ECF No. 104, pp. 2-7]. As explained below, the Undersigned finds that Plaintiff's

second amended complaint is subject to dismissal, but not for all the reasons argued by

Defendants.

### a.  Lack of Timely Service of Process

First, the Undersigned does not find that Pouyeh's second amended complaint

should be dismissed for lack of timely service of process. Pouyeh's service of process

defects were addressed by the Undersigned in relation to Pouyeh's amended complaint.

[ECF No. 64]. Pouyeh was provided leave to file a second amended complaint and to

"perfect service in accordance with Florida Law on all Defendants." [ECF No. 66, p. 3].

Pouyeh filed his second amended complaint and the Undersigned ordered the U.S.

Marshals Service to serve the complaint and summonses on Defendants. [ECF No. 85].

The summonses and complaints were served on the Defendants a few weeks later. [*See*

ECF Nos. 94; 96-101; 103]. The Court exercised its discretion to extend the time for service.

*See Horenkamp v. Van Winkle And Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) ("Rule 4(m)

grants discretion to the district court to extend the time for service of process even in the

absence of a showing of good cause."). Thus, this argument fails.

### b.  Res Judicata

Second, the Undersigned agrees in part with Defendants that Pouyeh's claims here

were previously litigated in the 2012 Lawsuit and are thus barred by res judicata. A claim

is barred by res judicata if the following elements are met: "(1) the prior decision must

9

have been rendered by a court of competent jurisdiction; (2) there must have been a final

judgment on the merits; (3) both cases must involve the same parties or their privies; and

(4) both cases must involve the same causes of action." *Mann v. Palmer*, 713 F.3d 1306,

1311 (11th Cir. 2013) (citation omitted).

Here, the first three elements are clearly met, as the prior decision in the 2012

Lawsuit was rendered by a court in the same district, there was a final judgment on the

merits, and both cases involved the same parties -- Jackson and those individuals in

charge of admission to Jackson's residency programs. *See Bascom Palmer Eye Inst.*, 613 F.

App'x at 804.

With regard to the fourth element, "if a case arises out of the same nucleus of

operative fact, or is based upon the same factual predicate, as a former action, [then] the

two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.*

(citation omitted). Here, the third amended complaint filed in Pouyeh's 2012 lawsuit

points to his denial of admission for the years 2010-2012 as the basis for his discrimination

claim. Thus, Pouyeh's claims in this case relating to his denial of admission for the years

***2010-2012*** arise from the same factual predicate and are barred by res judicata. However,

Pouyeh's claims arising from his denial of admission to the residency program after the

third amended complaint in the 2012 Lawsuit was filed (for the years 2013-2015) are not

barred by res judicata. *See Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1360-61 (11th

Cir. 1998) (holding that prior discrimination claim did not bar claims based on hiring decisions occurring after the filing of the prior claim).

### c. Dismissal Under Rule 8(a)(2) and Rule 12(b)(6)

As to Defendants' third argument, the Undersigned finds that Pouyeh's second amended complaint does not comply with Rule 8(a)(2), requiring a short and plain statement of the claim. Pouyeh's claims incorporate all prior allegations and do not specify what each defendant did and how they relates to that count. [See ECF No. 84, pp. 27-51]. Even though there are six different defendants, Pouyeh repeatedly accuses, in a general, sweeping way, the "defendants" of certain conduct. [ECF No. 84, ¶¶ 15, 20, 34]. Thus, Pouyeh's second amended complaint is arguably a shotgun complaint that fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland*, 792 F.3d at 1323.

These procedural defects may be grounds for dismissal. *See Luft*, 620 F. App'x at 704. However, because Pouyeh is appearing *pro se*, the Undersigned will liberally construe the second amended complaint and consider whether *any* of the factual allegations, which are incorporated into each count, support Pouyeh's different causes of action. The Undersigned finds that they do not.

Pouyeh alleges violations of the Equal Protection Clause, Title VII, FCRA, 42 U.S.C. § 1981. Title VII, the FCRA, and § 1981 "all prohibit an employer from engaging in discrimination on the basis of an individual's national origin" and can all be analyzed

11

together. *Bascom Palmer Eye Inst.*, 613 F. App'x at 809.[2] Pouyeh's allegations of

discrimination boil down to one complaint -- Jackson supposedly has a policy of not

admitting IMGs to its Bascom Palmer residency program and Pouyeh is being denied

acceptance to the program for this reason.[3] Assuming these facts are true, Pouyeh does

not state a cause of action for national origin discrimination.

Pouyeh has unsuccessfully attempted, on a number of occasions, to bring similar

claims. As discussed above, the Eleventh Circuit affirmed the district court's order

granting dismissal of his 2012 Lawsuit, finding that:

> Pouyeh alleges Bascom Palmer had a policy of not accepting graduates of
> foreign medical schools. This allegation cuts against Pouyeh's allegations
> of discrimination, because it suggests one of the necessary qualifications to
> be a resident physician at Bascom Palmer is graduating from an American

---

[2]     Pouyeh also alleges violation of substantive due process, but he has not identified
a constitutional right that was infringed other than to say that he is unable to find a wife
because he was rejected from the residency program. Admission to a residency program
is not a constitutional right. *See UAB*, 625 F. App'x at 499; *see also Pollard v. Cockrell*, 578
F.2d 1002, 1011 (5th Cir. 1978) (stating that there is no substantive due process "right to
engage in a lawful business, trade, or profession").

[3]     Pouyeh's remaining factual allegations appear to relate to what he perceives to be
unfair admission requirements for IMGs applying to residency programs in the United
States, such as the Step 2 exam requirements. These generic complaints do not appear to
be specific to Jackson's policies or Pouyeh's applications for admission submitted to
Jackson. Thus, they appear to be irrelevant to his discrimination claims against Jackson.

Pouyeh also makes conclusory references to Jackson's internal medicine and
neurology programs, including to alleged "quotas" of Latino and "Arab" applicants;
however, he does not allege any facts showing that he is qualified for those residency
programs, and he also later states that Jackson actually admits many other applicants
who attended medical school in Iran to those residency programs, which contradicts his
claim that Jackson is excluding Iranian-born applicants based on their national origin.

medical school. Moreover, the most plausible explanation for Pouyeh's application being rejected is the foreign medical school from which he graduated was not among the recognized medical schools. On the facts alleged in Pouyeh's complaint, his allegation of discrimination based on national origin amounted to no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotation marks omitted).

*Bascom Palmer Eye Inst.*, 613 F. App'x at 811.

Pouyeh also filed a lawsuit against the University of Alabama ("UAB") for being denied admission to UAB's ophthalmology residency program. *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 496 (11th Cir. 2015). Again, Pouyeh argued that UAB had a policy of not admitting IMGs to its residency program, which was discriminatory to Iranian-born doctors and had a disparate impact on Iranian doctors. *Id.* at 496-97. The district court granted UAB's motion to dismiss with prejudice. *Id.* at 496. On appeal, the Eleventh Circuit affirmed the district court's dismissal, finding that Pouyeh failed to state a cause of action for his discrimination claims. *Id.* at 499.

Specifically, the Eleventh Circuit found that "[r]ejecting applicants based on whether the medical schools they attended were accredited by the AMA or the CMA is not discrimination based on national origin." *Id.* at 497; *see also Maceluch v. Wysong*, 680 F.2d 1062, 1065 (5th Cir. 1982) (finding that "classifications . . . not based on alienage, but . . . based upon the locality of the education received" are not suspect because "[s]ubstantial numbers of Americans attend medical schools abroad, just as some foreigners attend medical schools in the United States"). Thus, the Eleventh Circuit found

13

that UAB's requirement that applicants attend accredited medicals schools is subject only to rational basis review, which the Court found was satisfied. *Id.* at 498.

Further, Pouyeh's bare assertion that UAB excluded Iranian doctors failed to allege a claim for disparate impact, which "requires factual allegations–usually a statistical disparity—demonstrating a disparity in treatment between groups so significant that it supports an inference that discrimination is the cause." *Id.* at 497.

Similarly, here, Pouyeh does not allege any facts supporting his claim that he is being discriminated against based on his national origin. Rather he alleges that he is being denied access because he is an IMG. This claim does not constitute discrimination based on national origin and is subject only to rational basis review, which has been found to be satisfied by the Eleventh Circuit. *See id.* at 498; *see also Maceluch v. Wysong*, 680 F.2d at 1065.

Additionally, Pouyeh has failed to include factual allegations "demonstrating a disparity in treatment between groups so significant that it supports an inference that discrimination is the cause." *UAB*, 625 F. App'x at 497. The only statistics that Pouyeh points to are those demonstrating that Bascom Palmer accepts less IMG applicants than other residency programs around the country. This does not demonstrate a disparity in treatment towards Iranian-born applicants. Instead, it merely reflects a difference in treatment towards IMGs as a whole.

For example, Pouyeh does not allege that qualified, Iranian-born applicants, ***who attend medical school in the United States***, are denied admission to Jackson's residency programs. In fact, Pouyeh alleges that Jackson does in fact admit many applicants who attended medical school in Iran to its other residency programs, which contradicts his claim that Jackson is excluding Iranian-born applicants. Thus, Pouyeh fails to state a plausible claim for disparate impact as well.

Accordingly, the Undersigned recommends dismissal of Pouyeh's second amended complaint. The Undersigned recommends that this dismissal be ***with prejudice***. Judge Martinez provided Pouyeh a "third and final opportunity" to replead his complaint to conform it to the Rules of Civil Procedure or the "matter may be dismissed with prejudice." [ECF No. 83, p. 2]. While Pouyeh did shorten the length of his complaint and appears to have attempted to conform it to the Rules of Civil Procedure, Pouyeh's second amended complaint still suffers from many of the same procedural defects as his prior complaints. *See Marshall v. Aryan Unlimited Staffing Solution*, 599 F. App'x 896, 899 (11th Cir. 2015) (finding that district court's dismissal with prejudice of *pro se* employment discrimination action was not an abuse of discretion where plaintiff was given numerous opportunities to file an amended complaint and plaintiff failed to cure the deficiencies).

Moreover, allowing Pouyeh to replead his complaint would be futile because Pouyeh's claim of discrimination has a fatal flaw that he cannot overcome -- medical

schools may deny admission to students who are not graduates from AMA or CMA schools. *See UAB*, 625 F. App'x at 497. The Eleventh Circuit made clear to Pouyeh in multiple decisions, which were decided well before he submitted his second amended complaint here, that a claim of discrimination made solely on those grounds fails to state a cause of action and that he must plead statistical facts "demonstrating a disparity in treatment between groups so significant that it supports an inference that discrimination is the cause." *UAB*, 625 F. App'x at 497; *see also Bascom Palmer Eye Inst.*, 613 F. App'x at 811 (stating Pouyeh failed to state a plausible disparate impact claim because "Pouyeh did not allege any facts in his complaint, such as statistics, sufficient to show the practice of not hiring graduates of foreign medicals schools has resulted in prohibited discrimination").

Pouyeh still fails to plead those facts here. Accordingly, the Undersigned **recommends** that the dismissal of Pouyeh's second amended complaint be *with prejudice*. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) ("The U.S. Supreme Court has held that undue delay and futility are adequate bases for denying leave to amend."); *see also Helm v. Liem*, 523 F. App'x 643, 646 (11th Cir. 2013) (affirming dismissal with prejudice of civil rights action because the plaintiff "repeatedly failed to cure the deficiencies in his complaint, and allowing him further attempts to amend would be futile").

## IV.   CONCLUSION

Accordingly, the Undersigned **respectfully recommends** that the District Court **grant** Defendants' motion to dismiss Plaintiff's second amended complaint **with prejudice**.

## V.   OBJECTIONS

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Jose E. Martinez. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, Miami, Florida, on June 24, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

The Honorable Jose E. Martinez

All counsel of record

Bozorgmehr Pouyeh, *pro se*
45 Seventeenth St. West
Mahestan Ave., Khalil-Abadi Blvd.
Bagh-E-Feyz Tehran 14737-74713
Iran