UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-23582-CIV-MARTINEZ/GOODMAN

DOCTOR BOZORGMEHR POUYEH,

    Plaintiff,

v.

PUBLIC HEALTH TRUST OF JACKSON
HEALTH SYSTEM, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
PARTIAL SUMMARY JUDGMENT MOTION

Plaintiff Bozorgmehr Pouyeh ("Plaintiff") filed this nine-count discrimination lawsuit *pro se*[1] against Defendants Public Health Trust of Jackson Health System, Carlos A. Migoya, Dr. Steven J. Gedde, Dr. Stefanie R. Brown, Dr. J. Donald Temple, and Dr. Doe (collectively, "Defendants"), alleging that Defendants violated his civil rights when they failed to hire him as a resident doctor in one of their facilities. [ECF No. 134]. Plaintiff

_____

[1]     "This Court is required to construe *pro se* filings liberally." *Stroud v. Bank of Am.*, No. 11-22489-CIV, 2012 WL 3150054, at *1 (S.D. Fla. Aug. 1, 2012) (quoting *Moghaddam-Trimble v. S. Fla. Water Mgmt. Dist.*, 479 F. App'x 311, 312 n.2 (11th Cir. 2012)); *see also*, *Retie v. United States*, 215 F. App'x 962, 964 (11th Cir. 2007) (explaining that federal courts may liberally construe pro se filings "in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis."). Liberal construction, however, does not mean that the Court will rewrite a filing on behalf of a *pro se* litigant. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

filed a partial summary judgment motion as to liability, arguing similar grounds as mentioned in his Third Amended Complaint. [ECF No. 185]. Defendants filed a response [ECF No. 199]. Plaintiff did not file an optional reply.

United States District Court Judge Jose E. Martinez referred all dispositive pretrial motions to the Undersigned for a report and recommendations. [ECF No. 141].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion.

## I.      PROCEDURAL HISTORY

### A.      Alabama

In 2012, Plaintiff sued the University of Alabama Board of Trustees and twenty individual defendants *pro se* in the Northern District Court of Alabama Southern Division. *Pouyeh v. UAB Dept. of Ophthalmology*, 66 F. Supp. 3d 1375 (N.D. Ala. 2014). His claims were based under Title VI, Title VII, and 42 U.S.C. § 1981, alleging that the university's school of ophthalmology denied him a position in its residency program based on his national origin. The district court dismissed his complaint based on his failure to state a claim, and he appealed to the Eleventh Circuit.

In *Pouyeh v. UAB Dept. of Ophthalmology*, 625 F. App'x 495 (11th Cir. 2015), the Eleventh Circuit affirmed the district court's decision and held that he failed to state a claim for each count. Plaintiff appealed the decision to the United States Supreme Court, which denied certiorari. *Pouyeh v. Bd. of Trs. of the Univ. of Ala.*, 577 U.S. 1081 (2016).

**B.     Florida**

In 2012, Plaintiff filed an employment discrimination lawsuit against Bascom Palmer Eye Institute and the Public Health Trust. *Pouyeh v. Bascom Palmer Eye Inst.*, No. 12-CV-23580-JLK, 2014 WL 11394983 (S.D. Fla. Aug. 4, 2014). He made claims similar to ones he made in the Alabama case: that the defendants did not select him as a resident "despite his *numerous* qualifications because of his national origin." *Id.* (emphasis added). The District Court dismissed his lawsuit, and stated,

> All Plaintiff has pled is simply the conclusion that his national origin was a factor in the denial of a residency position. This mere conclusion is insufficient to survive a motion to dismiss. As such, Plaintiff has not alleged facts to support his contention that national origin played any role in the denial of a residency position.

*Id.* at *5. Unsatisfied with the District Court's ruling, he appealed to the Eleventh Circuit.

The Eleventh Circuit affirmed the District Court's decision, and noted,

> Nevertheless, Pouyeh failed to provide sufficient factual matter to show he was qualified for the position. *See id.* He alleged in conclusory fashion he was qualified; he stated he had graduated from medical school in Iran and had clinical and research experience, but he did not allege the specific qualifications necessary for resident physicians at Bascom Palmer or that he had fulfilled them. Pouyeh's allegation he was qualified for the position amounts to a threadbare recital of an element of his Title VII claim, which the district judge was not obligated to accept as true.

*Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 811 (11th Cir. 2015). After the ruling came out, Plaintiff filed the instant lawsuit in 2016. In 2017, Judge Martinez granted Defendants' Motion to Dismiss but allowed Plaintiff to file an amended complaint. [ECF No. 66]. Judge Martinez dismissed Plaintiff's Complaint based on insufficient process. *Id.*

Plaintiff then filed a Motion for Reconsideration, which was denied by Judge Martinez on June 9, 2017. [ECF No. 69]. Plaintiff appealed both of these orders. [ECF No. 70-1]. The Eleventh Circuit affirmed both of Judge Martinez's decisions. [ECF No. 79].

On December 15, 2017, Plaintiff filed a motion to reopen the case and amend the Complaint. [ECF No. 77]. In February, Judge Martinez granted his request. [ECF No. 80]. Five months later, Plaintiff filed his Second Amended Complaint. [ECF No. 84]. On October 18, 2018, Defendants filed a motion to dismiss the Second Amended Complaint. [ECF No. 104]. Judge Martinez granted the motion based on *res judicata* and Plaintiff's failure to state a viable claim. [ECF No. 113]. In his Order granting Defendants' motion, Judge Martinez said the following,

> Pouyeh's objections are conclusory, repetitive, and, as Magistrate Judge Goodman properly determined, barred by the reasoning set forth in *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x. 802 (11th Cir. 2015) ("*Pouyeh I*") and *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x. 495 (11th Cir. 2015) ("*Pouyeh II*"). Although Pouyeh contends his newly-asserted legal theories are distinct, and his previous cases are unpublished and therefore nonprecedential, Pouyeh's present claims hinge on the same essential argument, namely, that a medical residency program's policy of rejecting graduates of international medical schools (taking the allegations to be true for present purposes) constitutes discrimination based on national origin.

*Id*. Plaintiff soon after appealed Judge Martinez's decision. [ECF No. 116]. The Eleventh Circuit affirmed Judge Martinez's ruling in part; and vacated and remanded in part. [ECF No. 121].

On March 10, 2021, Plaintiff filed his Third Amended Complaint. [ECF No. 134]. Defendants responded with their answer and affirmative defenses. [ECF No. 135]. On

May 8, 2023, Plaintiff filed the instant motion for Partial Summary Judgment as to liability. [ECF No. 185]. Defendants filed a response. [ECF No. 199]. Plaintiff did not file a reply and the time to do so has long expired.

## II.    FACTUAL BACKGROUND

Plaintiff submitted a statement of material facts [ECF No. 184] as well as a declaration in support of his motion [ECF No. 186]. Defendants submitted a response to Plaintiff's statement of material facts. [ECF No. 198]. Defendants thereafter filed a Joint Statement of Undisputed Facts [ECF No. 201].

The facts outlined below are generated, from the paragraphs in the **Joint** Statement of Undisputed Facts. [ECF No. 201]. The Undersigned will retain the paragraph numbering used by Plaintiff and Defendants in their memoranda.

The Undersigned sometimes changed the wording of an undisputed fact for stylistic and/or grammatical purposes. In addition, to enhance readability, I removed the specific record citations. They can be found in the source document, if needed.

1.      Plaintiff is from Iran and of Iranian/Persian race/ethnicity.

2.      Defendant Public Health Trust of Jackson Health System, ("the Trust") governs, operates, and maintains Jackson Memorial Hospital and other health-care facilities in Jackson Health System. Defendant Mr. Carlos A. Migoya has served as President and CEO of Jackson Health System since May 2011.

3.      Defendant Dr. Steven J. Gedde is the Program Director of Ophthalmology

Residency Program of the Trust and the head of residency selection committee of ophthalmology residency. Defendant Dr. Stefanie R. Brown was the Program Director for Internal Medicine in June of 2015 and, in that capacity, she performed the duties similar to the Program Director of Ophthalmology Residency Program of the Trust, but for Internal Medicine and Preliminary Medicine. Defendant Dr. Doe (Doe is a fictitious name for Dr. Stephen Syme), was the Program Director for Internal Medicine and Preliminary Medicine at the relevant time (2010-2014), before Dr. Brown. Defendant Dr. J. Donald Temple was director of the William Harrington Medical Training Programs for Latin America and the Caribbean.

4.      International Medical-school Graduates ("IMGs") are physicians who received a medical degree from a medical school located outside the United States.

5.      US-Seniors are 4th year medical students who have matriculated to a medical school located inside the United States but have not completed their medical school and have not obtained a medical degree. USMGs are United States Medical School Graduates.

6.      In 2010, 2011, 2012, 2013, 2014, and 2015, Plaintiff applied to the preliminary medicine internship of the Trust and he was not hired (matched). Plaintiff also applied to Defendants' internal medicine residency program in each year and was not hired. One can apply to both preliminary medicine and internal medicine using the same application. The application is via the Electronic Residency Application Service

("ERAS").

7.      In 2013, 2014, and 2015, Plaintiff applied to the ophthalmology residency of the Trust at Bascom Palmer Eye Institute.

8.      Between 2010 and 2012, Plaintiff was a research fellow in ophthalmology at the University of Miami Bascom Palmer Eye Institute.

9.      United States Medical Licensing Exams (USMLE) involve three-steps: Step 1; Step 2 CK and Step 2 CS; and Step 3. All the applicants from American allopathic medical schools as well as IMGs, who apply to medical residencies, are required to pass Step 1, Step 2 CK, and Step 2 CS.

14.     US-Seniors, are interviewed from October through February during their fourth year of medical school. The interviews occur before they graduate and obtain their required credentials from the medical school rotations or passing scores for USMLE Steps 2 CS and Step 2 CK.

15.     In contrast, IMGs must obtain their ECFMG certification before Defendants rank them for matching and hire them. To obtain ECFMG certification, IMGs must provide their medical school diploma and transcript; and pass USMLE Steps 1, Step 2 CK, and Step 2 CS.

16.     ERAS application forms have applicants specify their place of birth, country of citizenship, and self-identification.

17.     Defendants prefer for IMGs applying to internal and preliminary medicine

to pass the USMLE exams on the first attempt.

20.     IMGs with less than five years from when they graduated from medical school who apply to internal and preliminary medicine are preferred.

21.     Plaintiff started applying to the internal and preliminary medicine positions more than five years after his medical school graduation.

23.     The Department of Medicine of the University of Miami Miller School of Medicine offers twelve positions to Latin American physicians with a commitment to return to their home countries upon completion of training through the William J. Harrington Program as part of the UM/JMH Internal Medicine residency program.

24.     As Defendants stated on their website, "Having started as a group of three physicians in 1967, the Program has grown substantially over the years, twelve first year residency positions are dedicated each year to applicants from the Harrington Programs." In total, "347 trainees from Peru, Brazil, Colombia, Ecuador and over fifteen other Latin American and Caribbean countries have been accepted for training since the Program was founded."

25.     The goal of the Harrington Program is "to train physicians who, upon completion of their training, will return to their home countries with knowledge and experience that, otherwise, would be impossible to obtain. Faculty positions typically await the physicians upon return to their home country."

III.     LEGAL STANDARD

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Cf. Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

When deciding whether summary judgment is appropriate, the Court views all

facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). This means that the Court must draw all inferences in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010). Summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the [C]ourt should not grant summary judgment." *Allen v. Bd. of Pub. Educ., Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

## IV.   ANALYSIS

### A.   Title VII and FCRA Claims (Counts One, Three, Four, Six, and Eight)

A condition precedent to filing a Title VII claim is the exhaustion of administrative remedies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). Plaintiff must have filed an EEOC charge within 300 days of each alleged unlawful employment action. *See* 42 U.S.C. § 2000e-5(e); *see also*, *Thomas v. Fla. Power & Light Co.*, 764 F.2d 768, 769-70 (11th Cir. 1985). Plaintiff attached two separate EEOC charge forms to his Third Amended Complaint. [ECF No. 134 (Exh. 3)]. One is dated March 23, 2016 and the other May 5, 2016. *Id*. Therefore, under 42 U.S.C. §2000e-5(e), the unlawful employment action must

have occurred by May 28, 2015 and July 10, 2015 respectively. In other words, employment actions occurring before those two dates are barred.

"The applicable period for filing an EEOC charge of discrimination begins to run when the employee receives unequivocal notice of an adverse employment decision." *Wen Liu v. Univ. of Miami Sch. of Med.*, 693 F. App'x 793, 797 (11th Cir. 2017) (citing *Stewart v. Booker T. Washington Inc.*, 232 F.3d 844,849 (11th Cir. 2000)). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Section 1981 discrimination claims share the same requirements "of proof and use the same analytical framework as Title VII claims." *Wen Liu,* 693 F. App'x at 796 (internal citation omitted).

Nowhere in Plaintiff's Third Amended Complaint does he allege with specificity *when* the unlawful employment actions occurred. All Plaintiff alleges is that from 2010 to 2015, Defendants refused to hire him as a resident due to the discriminatory reasons alleged in his Complaint. [ECF No. 134]. Based on the EEOC charge forms he included, any potential Title VII claim for actions *before* the two 2015 dates is time barred.

The Florida Civil Rights Act ("FCRA") states that a plaintiff must file formal charges with the EEOC or state commission within 365 days of the alleged FCRA violation. Fla. Stat. § 760.11(1). Therefore, based on the EEOC forms Plaintiff included,

the unlawful action must have occurred either by March 24, 2015 or May 6, 2015, respectively. Any FCRA claims prior to these two 2015 deadlines are consequently time barred.

Defendants argue that Plaintiff's Title VII and FCRA claims are untimely because he did not allege when the unlawful act occurred.[2] [ECF No. 199]. Plaintiff failed to include any information indicating when or how he learned of Defendants' alleged unlawful employment actions. His allegations are seemingly based on an absence of action more so than a definitive act. Without a definitive act, this Court cannot conclude whether his claims are timely.

Because there is a factual dispute over whether Plaintiff's claims are timely or enough to support a *prima facie* case, Plaintiff is not entitled to partial summary judgment on these grounds. The Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion as to the Title VII and FCRA claims in Counts One, Three, Four, Six, and Eight.

## B.      Section 1981 Claims (Counts Three and Eight)

The Undersigned finds that Plaintiff failed to establish entitlement to summary judgment for discrimination under § 1981. Section 1981 claims share the same analytical framework as Title VII claims. Plaintiff argues that because the application forms asked

---

[2]      As noted, Plaintiff did not file a reply to Defendants' response and the time to do so has now passed.

about his race/ethnicity, national origin, and citizenship status, Defendants negatively took those factors into consideration. As Plaintiff himself stated in his motion, "[c]onclusory allegations, subjective beliefs, opinions, and unsupported assertions are insufficient as a matter of law to withstand [or obtain] summary judgment." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). Plaintiff attempts to support his § 1981 claims with self-made statistics and caselaw.

Plaintiff cites *Alexander v. Louisiana*, 405 U.S. 625 (1972) to support his argument that Defendants "substantially and significantly [considered] race/ethnicity, national origin, and citizen status" in their decision making. [ECF No. 134]. He claims *Alexander* holds that "the racial designation on both the questionnaire and the information card provided a clear and easy opportunity for racial discrimination." *Id*.

Plaintiff is incorrect in his assertion because what he quoted was *dicta* and not the Supreme Court's holding in *Alexander*.[3] *Dicta* is defined as those portions of an opinion that are "not necessary to deciding the case then before us." *United States v. Kaley*, 579 F.3d 1246, 1253 n. 10 (11th Cir. 2009) (citing *United States v. Eggersdorf,* 126 F.3d 1318, 1322 n. 4 (11th Cir. 1997)); *see also United States v. Crawley,* 837 F.2d 291, 292 (7th Cir. 1988) ("We have defined dictum as a statement in a judicial opinion that could have been deleted

---

[3]     In *Alexander*, the petitioner appealed his criminal conviction based on racial discrimination during the grand jury selection. 405 U.S. at 625. The Court held that the petitioner made a *prima facie* case of invidious racial discrimination through both a statistical basis and a showing that the selection procedures were not racially neutral given the percentage of certain races in the subject population. *Id*.

without seriously impairing the analytical foundations of the holding.").

Plaintiff failed to justify entitlement to summary judgment under § 1981 because his allegations in both counts are based on **assumptions**, not evidence.

In Count Three, he claims that Defendants violated the law by asking him about his race/ethnicity, national origin, and citizenship status in their application form and that those factors *were* significantly considered. [ECF No. 185]. However, Plaintiff did not include anything to substantiate that rash assumption.

In Count Eight, he reiterates the same argument as to Count Three but adds that Defendants' treatment of applicants from Latin America concerning the Harrington Program violates § 1981. The Undersigned disagrees with Plaintiff. Just because the program exclusively accepts applicants from Latin America, as it was designed to do, does not mean that it is a violation of § 1981. Plaintiff alleged that Defendants imposed a quota system in their selection. That allegation is an *assumption* based on a list from ECF No. 134, Exhibit 15. Plaintiff described Exhibit 15 as "residents in 'categorical' internal medicine and 'Latin American program' as well as 'preliminary' medicine."

However, there is no indication of where the information from that list comes from, nor is there any listed method Plaintiff used to verify its accuracy. "To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of [Rule 56(c)]." *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. 2010) (holding that

because exhibits were not properly authenticated, the district court was not required to consider them in opposition to defendant's motion for summary judgment.) (citation omitted); *see also*, *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."); *De Varona v. Discount Auto Parts, LLC*, 860 F. Supp. 2d 1344, 1347 (S.D. Fla. 2012) (unauthenticated pictures of parking lot did not establish store manager breached duty to patron).

Because both of Plaintiff's § 1981 claims are based on unsupported assertions, the Undersigned finds that they are insufficient as a matter of law to justify granting summary judgment in his favor. *See Mayfield*, 101 F.3d at 1376. Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion as to the § 1981 claims in Counts Three and Eight.

### C.     Section 1983 and Fourteenth Amendment Claims (Counts Two, Three, Five, Seven, Eight, and Nine)

Defendants argue that Plaintiff's § 1983 claims are barred because he failed to state a claim and because the individual Defendants are entitled to qualified immunity. [ECF No. 199]. After a review of the associated counts, the Undersigned agrees with Defendants' argument to the extent that Plaintiff is not entitled to summary judgment on liability.

To state a claim under 42 U.S.C. § 1983, Plaintiff must plausibly allege: "(1) a deprivation of a federal right and (2) that the deprivation was committed under the color

of state law. A defendant can only satisfy the second prong if 'the party charged with the deprivation [was] a person who may fairly be said to be a state actor.'" *Stevens v. Plumbers & Pipefitters Loc. 219*, 812 F. App'x 815, 819 (11th Cir. 2020) (internal citations omitted).

> To establish that a private party is a state actor, one of three conditions must be met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*Id* (internal citations omitted).

Separately, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986).

Meanwhile, equal protection is "typically concerned with governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups." *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296–97 (11th Cir. 2012); *See, e.g., Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008). It is critical for Plaintiff to define an "identifiable group" that has been discriminated against to establish a claim under the Equal Protection Clause. "[P]roof of

discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir.1995).

To make out a prima facie case of racial discrimination under Section 1983, a plaintiff must show: (1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected in spite of his qualifications; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp.*, 411 U.S. at 802. "The comparators for the fourth prong must be 'similarly situated in all relevant respects.'" *McNeal v. Tarrant, City Of*, 325 F. App'x 794, 796 (11th Cir. 2009) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

"Classifications that are not 'suspect' (i.e., classifications not made on the basis of race, alienage, national origin or gender) and classifications that do not burden 'fundamental rights' (i.e., privacy and travel) are tested under the 'rational basis' standard." *Friedlander v. Weintraub*, No. 06-61177-CIV, 2008 WL 113681, at *1 (S.D. Fla. Jan. 8, 2008) (citing *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

Under the rational basis test, the person alleging the equal protection violation bears the burden of establishing a prima facie case of an even application of the law. *Berroteran-Melendez v. I.N.S.*, 955 F.2d 1251, 1258 (9th Cir. 1992).

Accordingly, the rational basis standard affords a "'strong presumption of validity' and the burden lies with the plaintiff to demonstrate that no conceivable basis

exists to support the classification." *Id.* (citing *Resendiz-Alcatraz v. U.S. Attorney General*, 383 F.3d 1262, 1271-72 (11th Cir. 2004)).

But Plaintiff's equal protection claim here faces an uphill battle even if he submitted competent, actual evidence (which he did not). *Tobin v. Univ. of Maine Sys.*, 59 F. Supp. 2d 87, 90 (D. Me. 1999) ("That applicants for admission to professional or graduate school do not have a property interest in admission is well-established"); *Locke v. Shore*, 634 F.3d 1185, 1195 (11th Cir. 2011) ("Rational basis review applies to Due Process and Equal Protection Clause challenges to state professional regulations, because the right to practice a particular profession is not a fundamental one").

Plaintiff is not entitled to summary judgment in his favor on each of the counts included in this section because each of his claims were supported by only unauthenticated evidence and allegations which were conclusory and speculative. Because he failed to meet the standard for a successful summary judgment motion, the Undersigned will not discuss Defendants' argument on qualified immunity.[4]

In Count Two, Plaintiff argues that Defendants violated his rights under the Fourteenth Amendment and § 1983 by hiring applicants based on a different standard than was used for him. [ECF No. 134]. He claims that differing standards for US-Seniors and IMGs is an "invidious, intentional, and deliberate discrimination." *Id*. Plaintiff **cites**

---

[4]       Defendants did not file a separate qualified immunity motion.

**to himself for support**. He solely cites to a chart displaying the probability of matching, but does not include any of the information on which the chart is based.

In Count Three, Plaintiff argues that Defendants violated his rights under § 1981, § 1983, the Fourteenth Amendment, Title VII, and the FCRA by using an application, ERAS, that inquired about his race and ethnicity and taking it into consideration. *Id*. As previously stated in my discussion of § 1981, Plaintiff failed to present anything to the Court aside from his own *assumptions*. The Undersigned has little doubt that Plaintiff actually believes his own hunches and theories, but theories and hunches are not evidence -- and they cannot be used as a foundation to obtain summary judgment (even a partial one, on liability).

In Count Five, Plaintiff claims that Defendants irrationally discriminated against a subgroup of IMGs who did not pass an exam on the first attempt and that this discrimination violated their rights under the Fourteenth Amendment and § 1983. He cites to Exhibit 2, a screenshot taken from Defendants' website. [ECF No. 134-2] It details the IMG application requirements. The language Plaintiff takes issue with here is, "We do not have a specific score requirement, but preference for interviews is given to those who pass all [three] exams on the first attempt." *Id*. Plaintiff implies that the "preference" language is really a *requirement*. He assumes that because he did not pass one of the exams the first time around he was not given preference and therefore was not hired. His assumptions link the idea of passing everything on the first try with being hired. Yet in

his declaration, he listed **two** IMGs *hired* by Defendants who did not pass their exams on the first attempt. [ECF No. 186]. Like his previous claims, he fails to include any supporting **evidence** of this theory.

Plaintiff's allegation is merely a theory of discrimination. Aside from Plaintiff's self-serving statements, there is nothing to establish Plaintiff's suspicion -- that because of Defendants' preference, IMGs are disproportionally (and unlawfully) denied acceptance into the program. Without evidentiary support, his allegation amounts to no more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In Count Seven, Plaintiff claims that Defendants' preference for hiring IMGs within five years of their medical school graduation "irrationally discriminates" against a subgroup of IMGs who apply more than five years after their medical school graduation. [ECF No. 134]. Plaintiff's argument here commits the same error as those above: he fails to include any *actual* support.

In Count Eight, Plaintiff argues that Defendants intentionally discriminated against him by setting a quota for the Harrington Program as well as "Arabs in internal medicine and residency programs." [ECF No. 134]. As previously stated in discussing § 1981, Plaintiff included unauthenticated information and statistics of his own making as supposed support for this claim. This contention lacks any evidentiary proof or support indicating that there was a quota in place *in general*. Therefore, the Undersigned cannot

find in Plaintiff's favor as to this count due to his failure to demonstrate the absence of a factual dispute and his failure to submit adequate, competent evidence to establish that his claim is more than a fact-free hunch. *Damon*, 196 F.3d at 1358.

In Count Nine, Plaintiff claims that Defendants violated his rights under the Fourteenth Amendment and § 1983 because they established "a quota for the applicants in Preliminary medicine who will pursue Neurology, instead of other specialties, in their second year." But, once again, there is no *evidence* supporting this claim. Plaintiff's guesses and speculation are not evidence which could support his impression. Therefore, it should be denied.

Each of Plaintiff's arguments under § 1983 and the Fourteenth Amendment are plagued with the same problems which taint all of his arguments: factual disputes over the claims, and, most importantly, the absence of authenticated and competent **evidence**. Because of those factors, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion as to these counts.

V.     **Conclusion**

Plaintiff's motion is riddled with assumptions, speculation, and unauthenticated evidence. As Defendants stated in their response to Plaintiff's motion, he did "not cite to any record evidence establishing that [D]efendants knowingly violated any law." [ECF No. 199]. The majority of his purported citations are to his own statements, as well as his arguments from the Third Amended Complaint [ECF No. 134] and Material Statement of

Facts [ECF No. 184].

The Undersigned agrees with Defendants that Plaintiff presented "no evidence that the decision not to select [him] violated any of [his] clearly established statutory or constitutional rights." [ECF No. 199]. *See Tobin*, 59 F. Supp. 2d at 90 ("That applicants for admission to profession or graduate school do not have a property interest in admission is well-established."); *Locke*, 634 F.3d at 1195 ("Rational basis review applies to Due Process and Equal Protection Clause challenges to state professional regulations, because the right to practice a particular profession is not a fundamental one.").

Successful summary judgment motions must be based on evidence, not hunches or speculation. *See Saunders*, 360 F. App'x at 113 (district court properly refused to consider unauthenticated exhibits submitted by *pro se* plaintiff in racial discrimination lawsuit); *Rowell v. BellSouth Corp.*, 433 F.3d at 802 (affirming summary judgment for defendant employer in age discrimination lawsuit because plaintiff "has not presented any evidence 'from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue'"); *De Varona*, 860 F. Supp. 2d at 1347 (denying the plaintiff's motion to remand because the photographs the plaintiff submitted were unauthenticated and because "[the] [p]laintiff relies solely on the unsupported allegations made previously in her complaint").

"A party's mere "belief" and/or speculation is not based on personal knowledge and is not competent summary judgment evidence." *Gen. Longshore Workers, Int'l*

*Longshoremen Ass'n, Local 1988 v. Pate Stevedore Co.,* No. 91–30292–RV, 1993 WL 603297 at *8 (N.D. Fla. Dec. 30, 1993) *aff'd sub nom. Gen. Longshore v. Pate Stevedore,* 41 F.3d 668 (11th Cir. 1994) (holding that a party's belief does not satisfy the personal knowledge requirement because "[b]elief, no matter how sincere, is not equivalent to knowledge") (*citing Jameson v. Jameson,* 176 F.2d 58, 60 (D.C. Cir.1949)).

Phrased differently, mere belief of an alternative fact is insufficient to create a genuine dispute. *See Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002) (an affidavit stating only that the affiant "believes" a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact); *Tavery v. United States,* 32 F.3d 1423, 1427 n. 4 (10th Cir. 1994) (affiant's statement "I do not believe that the Internal Revenue Service was the source of the information" regarding taxpayer's income, occupation, and tax funds was a mere statement of belief and therefore insufficient to support summary judgment on a source of disclosure issue).

The Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's Partial Summary Judgment Motion based on Plaintiff's consistent failure to present a valid prima facie case through competent evidence. *See*, generally, *Riley v. Univ. of Ala. Health Servs. Found., P.C.,* 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("a party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence"). *See also Ray v. Tandem Comput.,* 63 F.3d 429, 434 (5th Cir. 1995) (finding an employee's subjective belief of discriminatory intent insufficient to

defeat summary judgment); *Bassano v. Hellmann Worldwide Logistics, Inc.,* 310 F. Supp. 2d

1270, 1280 (N.D. Ga. 2003) ("Plaintiff cannot rely on suspicion or conjecture to prove that

unlawful discrimination motivated Defendant").

## VI.   Objections

The parties will have 14 days from the date of being served with a copy of this

Report and Recommendations within which to file written objections, if any, with the

District Judge. Each party may file a response to the other party's objection within 14 days

of the objection. Failure to file objections timely shall bar the parties from a de novo

determination by the District Judge of an issue covered in the Report and shall bar the

parties from attacking on appeal unobjected-to factual and legal conclusions contained in

the Report except upon grounds of plain error if necessary in the interests of justice. *See*

29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d

790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on July 27,

2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record
Doctor Bozorgmehr Pouyeh, *Pro Se*
 #45 West Seventeenth Street
 Mahestan Street, Khalil-Abadi Blvd.
 Baghe-Feyz, Tehran, Iran